**M.E. OKERE, Appellant,**

v.

**APEX FINANCIAL CORPORATION, Julie A. Gamin, Ethel Calloway, and Albert Benser, Appellees.**

**No. 05–95–00336–CV.**

Court of Appeals of Texas, Dallas.

July 19, 1996.

Rehearing Overruled Sept. 10, 1996.

M. E. Okere, Pro Se.

Henry Wise, Attorney at Law, Dallas, S.J. Segal, Attorney at Law, Irving, for Appellee.

Before JAMES, WRIGHT and HANKINSON, JJ.

HANKINSON, Justice.

In this appeal, we consider whether an altered appellate record prohibits our review of the complaints on appeal by the party who tampered with the record. Acting pro se, M.E. Okere appeals the trial court's judgment awarding Apex Financial Corporation ("Apex") possession of real property that Okere and his wife, Ifeoma Njoku ("Njoku"), claimed was wrongfully seized, imposing sanctions for attorney's fees in favor of Apex, Julie Gamin and Albert Benser, and entering a permanent injunction in favor of Apex, Gamin, Benser and Ethel Calloway. After reviewing the briefs and record in preparation for oral argument and submission, this Court questioned the integrity of the record and ordered the trial court to conduct an evidentiary hearing. That hearing resulted in the trial court's finding that appellant tampered with the record. We hold that when an appellant purposely alters an appellate record, he fails to meet his burden under Texas Rule of Appellate Procedure 50(d) to present a sufficient record showing error requiring reversal. Consequently, we affirm the trial court's judgment.

## BACKGROUND

On November 11, 1988, the 302nd District Court of Dallas County entered a final judgment of divorce between Julie Gamin and Modestus Ejike Okere. That judgment awarded Gamin $6,000. On March 5, 1991, the sheriff seized and sold real property owned by M.E. Okere [1] ("Okere") and Njoku

---

1. Okere testified during the evidentiary hearing beginning March 29, 1996, that his name is spelled "ME," not "M. E." or "M.E.," as is reflected in the style of this appeal. Okere also testified that his African name is "Ejike ME Okere."

to satisfy Gamin's judgment. Apex purchased the property at the sheriff's sale and then leased the property to Ethel Calloway.

### The Underlying Lawsuit

Acting pro se, Okere brought four lawsuits in connection with the seizure of his property.[2] The trial court consolidated the four suits in the underlying proceeding. Okere claimed that: (1) he was not Modestus Okere; (2) he owned the seized property and Modestus Okere did not; (3) he was not the person against whom the judgment was entered; *or* (4) if the court found he was Modestus Okere, the seized property was his homestead. After a three-day bench trial, the trial court on October 22, 1994 entered judgment for appellees, finding:

(1) On March 5, 1991, "M E Okere" was the owner of record of the seized property;

(2) Njoku received the property by conveyance, subject to all judgment liens against the conveyor, "M E Okere," and was the legal, unrecorded owner of the property, as her separate property, on March 5, 1991;

(3) the property was not the homestead of "M E Okere" or Njoku on March 5, 1991;

(4) "M E Okere" is the same person as Modestus Ejike Okere, respondent in cause no. 88–9377–U, styled *In the Matter of the Marriage of Julie Ann Gamin and Modestus Ejike Okere;*

(5) "M E Okere's" testimony and evidence are not credible;

(6) Benser did not act in his individual capacity against "M E Okere" or Njoku;

(7) pursuant to a sheriff's deed dated March 5, 1991, Apex is the lawful recorded owner of the property;

(8) in August 1994, "M E Okere" prematurely filed an abstract of judgment before any judgment became final and before an August 1, 1994 judgment was

set aside by court order dated August 15, 1994;

(9) any writ of possession granted to "M E Okere" in connection with the August 1994 abstract was set aside;

(10) "M E Okere's" and Njoku's claims were groundless, brought in bad faith, and for the purposes of harassment;

(11) good cause existed for the imposition of sanctions because "M E Okere" consistently:

  (a) misrepresented rulings of the courts in numerous pleadings;

  (b) stated facts in pleadings and in court with full knowledge of their falsity;

  (c) unnecessarily filed multiple suits in justice courts and district courts regarding the same circumstances and subject matter;

  (d) ignored rulings of the court;

  (e) prepared a pleading on behalf of Njoku with knowledge that the pleading was false and with the sole intent to harass and cause expense to Apex and Gamin;

  (f) retained counsel on behalf of Njoku and intentionally informed counsel of facts to be used in a pleading he knew to be false;

  (g) caused unnecessary expense to all defendants; and

  (h) generally misused the courts of the State of Texas.

Pursuant to rules 13 and 215(2)(b) of the Texas Rules of Civil Procedure, the trial court sanctioned "M E Okere" $2,500 for Apex's attorney's fees, $6,204.24 for Gamin's attorney's fees and expenses, and $750 for Benser's attorney's fees. The trial court also permanently enjoined "M E Okere" and Njoku from:

(1) filing any causes of action in any court in this State against Apex, Gamin, Benser, and Calloway regarding title or right of possession of the property or

---

**2.** In addition to Apex, Okere sued Benser individually and as president of Apex. Okere also sued Calloway, an Apex tenant, seeking possession of the premises. The four cases were: (1) 93–19946–U in the 302nd District Court of Dallas County; (2) 94–01655–F in the 95th District Court of Dallas County; (3) 94–05589–L in the 193rd District Court of Dallas County; and (4) 94–6841–G in the 134th District Court of Dallas County.

any damages incurred as a result of Gamin's execution on her judgment and the March 5, 1991 sheriff's sale;

(2) interfering with Apex, its heirs and assigns, and any tenant in possession of the property;

(3) going onto or within 50 feet of the property;

(4) contacting in person, in writing, by telephone, or in any other manner any tenant or occupant of the property;

(5) communicating with Gamin, Apex or any of its officers and employees, Benser, or Calloway in person, in writing, by telephone, telegraph, televideo, audio recording or in any other manner;

(6) threatening to take unlawful action against or inflict bodily harm or injury against Gamin, Apex or any of its officers and employees, Benser, or Calloway; and

(7) causing third parties to contact Gamin, Apex or any of its officers and employees, Benser, or Calloway with the intent to annoy or alarm them.

M.E. Okere appealed the trial court's judgment on January 17, 1995.[3]

## The Appeal

### The Motions for Emergency Relief

On March 16, 1995, Okere, acting pro se, filed an application for emergency relief and temporary injunction seeking possession of the property pending appeal. This Court denied the application. Okere filed a motion for rehearing on March 17, 1995, asking this Court to reconsider his application for emergency relief and temporary injunction. This Court denied the motion for rehearing. On May 2, 1995, Okere filed another application for temporary injunction seeking possession of the property pending appeal. This Court also denied that application, stating that it would consider no further motion requesting injunctive relief about the property.

On May 30, 1995, Okere filed an application for sequestration, seeking to "preserve the value of the property, loss of rental value of $850.00 and title." That application evi-

dently asked this Court either to restore possession of the property to Okere pending appeal or, in the alternative, to compel Apex to deposit any rentals it receives from the property into the trial court's registry pending appeal. This Court denied that application. On August 14, 1995, this Court denied Okere's fifth attempt to secure possession of the property during the pendency of the appeal, stating:

The Court will entertain no further motions, applications for writs, or other requests for relief, requesting this Court to: (1) temporarily restore possession of the realty ... to [Okere], pending appeal; or (2) require [Apex] to deposit any rentals or any other form of security into the registry of the court, pending appeal.

### Presubmission: The Record, Okere's Brief, and Appellees' Response

On appeal, Okere filed as the record: (1) two volumes of transcript from cause number 93–19946–U on March 3, 1995; (2) three volumes of the statement of facts from cause number 93–19946–U on June 16, 1995; (3) one volume of the statement of facts from cause number 94–05589–L on June 16, 1995; and (4) one volume of trial exhibits from cause number 93–19946–U on July 5, 1995. On July 5, 1995, this Court ordered the clerk to allow Okere to remove "one volume of the original exhibits" from the Court and ordered the volume returned July 10, 1995.

Okere filed his original brief on July 13, 1995. On August 7, 1995, Apex, Gamin, and Benser (collectively "appellees") responded to Okere's brief and filed a motion to dismiss the appeal. Appellees asserted as grounds for dismissal, among other things, that Okere tampered with the trial court's files by removing and or substituting several documents. Appellees specifically alleged that documents at pages 101–04, 106, 258–60, and 274–76 of the transcript had no relation to the appeal because those documents were bankruptcy court documents and other documents never introduced or admitted in the underlying lawsuit. Appellees also com-

---

3. In his notice of appeal, Okere represents that he appeals the final judgment entered in favor of

"defendants." Only Apex, Gamin, and Benser, however, filed a response to Okere's brief.

plained that although Okere obtained duplicate copies of the transcript and statement of facts, he had checked out the transcript and statement of facts from this Court and failed to return them as of July 31, 1995–more than two weeks after he had filed his brief. Appellees prayed that this Court confine Okere in jail for not less than two years to prevent further harassment, threats, intimidation, and abuse of appellees, their agents, attorneys, tenants, and anyone else. Alternatively, appellees requested that this Court order Okere to amend his brief to meet the Court's briefing requirements and return all volumes of the statement of facts to the Court. On August 9, 1995, this Court denied appellees' motion to dismiss Okere's appeal and denied as premature all other relief requested in appellees' response to Okere's brief and motion for dismissal.

### Submission: The State of the Record

The Court set the cause for submission on March 13, 1996. While reviewing the briefs and record in preparation for oral argument, the Court considered appellees' response to Okere's brief in light of the state of the record.

**The Transcript.** Volume I of the transcript contained these alterations:

1. *Yellow highlighting:* pleading titles; parties' names; birthdate of Modestus Okere; judge's name and assignment; transfer of court papers; language of order requiring return of funds; designation of 1990 homestead; allegations contained in plaintiff's second amended original petition; legal description of the property; levy language; notice to vacate premises; allegations contained in joint pre-conference statement and affidavit filed in United States Bankruptcy Court for Northern District of Texas; date on warranty deed; and mandate that judgment be reinstated (pages 1, 21, 27, 32, 35, 39–40, 45, 54–5, 57, 60, 70, 72–4, 84, 101, 104, 152, 157[4]);

2. *Red ink:* interlineations; circling and drawn arrows pointing to parties' names; drawn stars and question

marks; single check mark beside "Modestus Okere" and residential homestead grant (pages 30, 32–33, 39–41, 58, 60);

3. *Blue ink:* interlineations; check mark beside party name on affidavit filed in federal bankruptcy court and deputy name on correspondence; case name cited in order; amended judgment date; and mandate that judgment be reinstated (pages 104, 120–21, 145, 157); and

4. *Green highlighting:* date on warranty deed (page 152).

Volume II's seal was removed partially from the front of the volume to expose and allow removal of the red ribbon normally secured underneath. The volume contained alterations similar to the alterations outlined in Volume I:

1. *Yellow highlighting:* "homestead" designation and address on 1991 appraised value statement; pleading title and mandate reinstating judgment; party name as counsel of record; page number on order setting aside judgment; "Modestus" typed on deed; date on warranty deed; addressee and 1990 homestead exemption grant language; word "homsted" [sic] on notice of 1991 appraised value; residential homestead exemption notice for 1991 through 1994; notice of investment of funds held in registry of Dallas County district clerk; birthdate for "Modestus Ejike Okere" on writ of execution request form; words "return to" on copy of envelope; "Julia Gamin, "Tenant Name" and "Okere, Modestus" on Dallas Housing printout; "single" status on Gamin's tax forms; words "tax roll year 1990" and address on market value form; and "X" marked on grievance complaint (pages 186, 203–04, 206, 209, 225–26, 235, 237, 243, 245–47, 252, 255–60, 266–67, 269–74, 289–90, 293).

**The Statement of Facts.** Volumes I, II, and III of the statement of facts from cause number 93–19946–U contained these alterations:

---

**4.** Page numbers are referenced to demonstrate the quantity of pages altered.

1. *Pencil:* interlineations of Okere's testimony (pages 32, 184, 196–98, 203, 210–12, 220, 226–27, 237, 269, 460, 470, 480–81); insertion of the word "lien" (page 197); insertion of the word "damage" (page 201); insertion of words "or Dec." (page 226); interlineation of Gamin's testimony (pages 414, 421, 424–27, 429, 431–34, 440–41, 443, 445–46, 448–49, 452, 456, 458); interlineation of Steve Segal's testimony (pages 504, 507–08); deletion of word "off" and insertion of word "out" in Segal's testimony (page 510); interlineation of Benser's testimony (page 514);

2. *Orange highlighting:* Okere's testimony (pages 127–30, 132–33); illegible word inserted and question mark drawn (page 134);

3. *Yellow highlighting:* Janelle Pogue's testimony (pages 145, 155, 157); Okere's testimony (page 184); Gamin's testimony (pages 399–401, 404, 407–08, 413–15, 417, 421–22, 424–432); and

4. *Blue ink:* interlineation of Gamin's testimony (page 376).

The single volume of the statement of facts from cause number 94–05589–L contained an alteration in Okere's testimony in blue ink, deleting the word "I" and inserting the word "he" (page 5).

**The Trial Exhibits.** The trial exhibits contained these alterations:

1. *Yellow highlighting:* plaintiff's exhibits 2, 53, 56, 58; defendant Gamin's exhibits 1, 2;

2. *Pencil:* notation "two brothers" and question mark at defendant Gamin's exhibit 22; and

3. Plaintiff's exhibit 6 was separate from the trial exhibits volume.

After reviewing the entire record, this Court noted in an order issued March 13, 1996 that: (1) loose documents had been inserted into the transcript; (2) portions of the transcript were highlighted; (3) handwritten annotations and interlineations were made to the statement of facts; and (4) at least one exhibit had been detached from or inserted loosely into the original volume of exhibits prepared by the court reporter.

This Court, therefore, ordered the matter referred to the trial court to conduct an evidentiary hearing within thirty days. The purpose of the evidentiary hearing was to determine whether Okere: (1) caused any material to be improperly placed in the trial court's files for inclusion in the transcript before this Court; (2) removed any material from the trial court's files or substituted extraneous documents in place of documents properly included in the transcript; (3) broke, removed, or otherwise tampered with the seal of the district clerk of Dallas County on the transcript filed with this Court; (4) altered the appearance of the transcript filed with this Court by inserting extraneous documents into the transcript or highlighting portions of the transcript; (5) made any handwritten annotations or interlineations in the statement of facts; and (6) inserted any exhibits (whether loosely or bound) not offered into evidence or, if offered, not admitted into evidence, into the volume of exhibits prepared by the court reporter, or whether he had detached any exhibits from the volume of exhibits as prepared and bound by the court reporter.

The clerk of this Court transmitted the transcript, the statement of facts from both cause numbers, and the exhibits filed in this appeal to the clerk of the 302nd District Court of Dallas County, and ordered the clerk to return them within twenty-four hours after the trial court's evidentiary hearing. This Court also ordered the trial court to make a record of the hearing, including a supplemental statement of facts for any testimony presented, a supplemental transcript containing the trial court's findings of fact and conclusions of law, and any recommendations that the trial court might make to assist this Court.

### The Trial Court's Evidentiary Hearing

The trial court conducted an evidentiary hearing on March 29, 1996 and April 1, 1996. The court reporter who prepared the statement of facts, Okere, the attorneys for Apex, Gamin and Benser, and Benser all testified at the hearing. Because Okere claimed during the hearing that many of the transcript documents and trial exhibits concerned some-

one other than himself, the trial court also conducted an evidentiary inquiry to determine Okere's identity and that of the person named in many of the exhibits. On April 11, 1996, the trial court tendered to this Court a supplemental statement of facts from the evidentiary hearing and a supplemental transcript that contained its findings.[5]

In its findings, the trial court first found that of the parties, only Okere made repeated requests to view the material this Court returned to the trial court. The trial court continually refused Okere's request to examine the record, and no one touched the record while the trial court had possession of it, except during the evidentiary hearing as reflected in the supplemental statement of facts.

The trial court next addressed the state of the record. Considering the statement of facts, the trial court found that: (1) although the statement of facts contained alterations made after it was prepared and filed in this Court, the court reporter who prepared the statement of facts did not alter, highlight, or interlineate the statement of facts; (2) the highlights and interlineations in the statement of facts were favorable to Okere and did not benefit any defendant; (3) Okere admitted that he had access to the statement of facts; and (4) Okere checked out and removed the statement of facts from this Court "even though at all times in question he had in his possession a duplicate of the Statement of Facts." The trial court also found that although exhibit 6 should have been included in the trial exhibits volume, it had been removed from the trial exhibits volume before its return to the trial court and was not bound with any other exhibits.

The trial court then made findings about the transcript: (1) the seal on volume II of the transcript appeared to have been removed and torn before the case was "remanded" to the trial court; (2) breaking of the transcript seal was behavior consistent with the alterations made to the statement of facts; (3) the documents contained in the trial court's files varied from the documents included in the transcript; (4) exhibits attached to documents in the transcript had been altered from the form in which they existed in the trial court's files; and (5) the alterations occurred after the district clerk prepared the documents for inclusion in the transcript.

Finally, the findings recite that as a result of the evidentiary inquiry concerning Okere's identity, the trial court developed "grave doubts as to the credibility of Mr. Okere" and that the material contained in the supplemental statement of facts casts "grave doubt upon the veracity of Okere's testimony in many aspects of the lawsuit." Because Okere benefitted from the alterations to the statement of facts and because he had the record in his possession, the trial court concluded that Okere is the party who tampered with the record.

## DISCUSSION

In twenty-eight numbered issues and twelve separately numbered points of error, Okere complains on appeal that the trial court erred in: (1) failing to set aside the sheriff's sale; (2) denying Okere's motion for contempt, partial summary judgment, and motion for new trial; (3) denying Okere's various motions for recusal; (4) failing to take judicial notice of the divorce decree; (5) ignoring Okere's evidence designating the property as his homestead; (6) awarding attorney's fees to appellees; (7) denying Okere's motion for continuance; (8) denying Okere's motion to hold an "evidentiary hearing" on the allegation of the marriage between Gamin and Modestus Okere; (9) finding that Modestus Ejike Okere is the same person as ME Okere; and (10) finding that a deed on "forced sale" is superior to an unrecorded deed. Okere alleges that the trial court's order prohibiting him from filing any claim for personal damages in Texas state courts violates his constitutional rights and that the trial court was biased and prejudiced

---

5. This Court ordered the trial court to file its findings of fact in a supplemental transcript after conducting its evidentiary hearing. The statement of facts from the evidentiary hearing shows that the trial court instructed Okere it would make findings of fact for this Court. Thus, we treat the trial court's "statement" contained in the supplemental transcript, although untitled, as its findings of fact.

against him. Okere also claims the evidence is insufficient to support the trial court's findings.

    The burden is on the party seeking review to see that a sufficient record is presented to show error requiring reversal. TEX.R.APP. P. 50(d). An appellant's purposeful alteration of an official appellate record destroys the integrity of that record. An appellate record's integrity is crucial for proper appellate review, which is the right an appellant invokes when he pursues an appeal. An appellant's right to appellate review is accompanied by the duty to provide an accurate record sufficient for the appellate court to perform its function to determine the correctness of the lower court's judgment. When an appellant alters an appellate record, he fails by his own actions to provide the appellate court with a sufficient record. We hold, therefore, that when an appellant purposely alters an appellate record, he fails to meet his burden under rule 50(d) of the Texas Rules of Appellate Procedure to present a sufficient record showing error requiring reversal.

Okere acted pro se throughout this appeal. The trial court found that despite having his own duplicate copy of the record, Okere checked out and altered this Court's record. We recognize each of the trial court's findings and emphasize three of those findings in reaching our disposition today. First, the statement of facts in this record contains alterations the trial court found were made by Okere and benefitted Okere. Second, the documents contained in the trial court's files vary from the documents contained in the transcript. Finally, exhibits to documents in the transcript have been altered from the form they exist in the trial court's files.

The alterations Okere made to the record are not confined solely to the highlighting or underlining of passages. Rather, Okere's tampering with the record includes altering testimony as recorded in the statement of facts and altering transcript documents. This record varies from the trial court's record of the proceeding. These are substantive changes Okere made only to benefit his case on appeal. Tampering with a governmental record under certificate or seal is a third-degree felony. *See* TEX. PENAL CODE § 37.10(a)(3),(d) (Vernon 1994). We, therefore, refer the record in this matter to the office of the district attorney. The clerk is directed to send a certified copy of this opinion to the Honorable John Vance, District Attorney, Dallas County, Texas, for whatever action, if any, he deems appropriate.

Based on the trial court's findings of Okere's acts of misconduct, we conclude that Okere failed to present a sufficient record showing error requiring reversal under rule 50(d) of the Texas Rules of Appellate Procedure. We overrule Okere's twelve points of error and affirm the trial court's judgment.